UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HAROLD MONTGOMERY,<br>    Plaintiff, | : <br> : <br> : | CASE NO. 3:17-cv-1635 (MPS) |
| v. | : <br> : | |
| DEPARTMENT OF CORRECTION, et al.,<br>    Defendants. | : <br> : <br> : | NOVEMBER 13, 2017 |

**INITIAL REVIEW ORDER**

Plaintiff Harold Montgomery, currently incarcerated in the Walker building of the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983, asserting claims alleging violations of various federal and state constitutional rights. The plaintiff names three defendants: the Department of Correction, Deputy Warden Guadarrama, and Lieutenant Beebe. Defendants Guadarrama and Beebe are named in their individual and official capacities.[1] The complaint was received by the Court on September 28, 2017. The plaintiff's motion to proceed *in forma pauperis* was granted on November 3, 2017. (ECF No. 10.) For the reasons set forth below, the Court dismisses the complaint without prejudice.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be

---

[1] The plaintiff states in his description of the parties that defendant Guadarrama is named in individual capacity only. ECF No. 1 at 12. In the section entitled "Capacity of the defendants" he states that all parties are named in individual and official capacity. *Id.* at 14. The Court assumes, therefore, that the plaintiff intended to name

granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. <u>Allegations</u>

On August 31, 2017, the plaintiff was housed in cell 8 in B-unit of the Walker building at MacDougall-Walker Correctional Institution. That day, he told defendants Guadarrama and Beebe that the emergency call button in his cell was inoperable. Defendant Beebe pressed the button and did not receive a response from the control center. The plaintiff repeated his complaint on several occasions. At some unspecified time between August 31, 2017, and September 13, 2017, the day he signed the complaint, the plaintiff fell, injuring his neck and experiencing back pain, "and could not receive" immediate help. The plaintiff provides no other details about this event, including whether he required and received medical treatment and, if so, the interval between his injury and any such treatment.

---

defendant Guadarrama in both capacities.

II. Analysis

The plaintiff identifies the following claims: (1) deliberate indifference, (2) failure to protect, (3) cruel and unusual punishment, (4) denial of adequate medical care/negligence, and (5) unconstitutional conditions of confinement. He also alleges violation of his rights under the First, Eighth, Tenth and Fourteenth Amendments as well as the Americans with Disabilities Act and Rehabilitation Act.

A. Americans with Disabilities Act and Rehabilitation Act

The purpose of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), provides that "[n]o otherwise qualified individual with a disability … shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." Both statutes are intended "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). The plaintiff also refers to 28 C.F.R. §§ 35.130 and 35.152(b)(3), two implementing regulations of the ADA, which require that disabled inmates be housed in cells modified to ensure accessibility.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). When analyzing claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted).

The plaintiff identifies no disability that limits any of his major life activities. Absent a showing that his is disabled and that the defendants acted because of the disability, the plaintiff cannot state a cognizable claim for violation of his rights under the ADA or Rehabilitation Act. All claims under the ADA or Rehabilitation Act are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). As there is no ADA violation, any claims based on the alleged failure to comply with the implementing regulations also are dismissed.

Even if the plaintiff were disabled, his claim would be dismissed. Neither the ADA nor the Rehabilitation Act applies to claims regarding the quality of medical services provided by correctional departments or provide a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08 Civ. 301(LTS), 2010 WL 2899751, at *2 (S.D.N.Y. July 21, 2010) (citations omitted). "[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided." *CERCPAC v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988). Such claims are considered under the Eighth Amendment. *See Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (dismissing ADA suit alleging inadequate medical treatment but not alleging inmate was treated differently because of disability).

B. <u>Eighth Amendment Claims</u>

The plaintiff contends that the defendants were deliberately indifferent to his serious medical needs, failed to protect him from harm, and subjected him to unconstitutional conditions of confinement and cruel and unusual punishment for failing to house him in a cell with a working emergency call button. He argues that the lack of a working call button denied him immediate access to medical or mental health care in case of an emergency.

To state a claim for deliberate indifference to a serious mental health need, the plaintiff must show both that his need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The subjective component requires that the defendants be actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).

Although the plaintiff alleges that the defendants were deliberately indifferent to his serious medical and mental health needs, he does not identify any medical or mental health need. Nor does he allege sufficient facts to enable the Court to determine if he was denied access to medical care. Absent allegations showing that he had a medical or mental health need of constitutional dimension, or that the defendants were deliberately indifferent in responding to

5

that need, the plaintiff fails to allege a cognizable claim for deliberate indifference to medical or mental health needs.

The plaintiff also alleges that the defendants failed to protect him from harm or were deliberately indifferent to his safety, acted in a way that constitutes cruel and unusual punishment, and subjected him to unconstitutional conditions of confinement by failing to ensure that he was housed in a cell with a working emergency call button.

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Courts within the Second Circuit have not considered whether an inoperable emergency call button rises to the level of an Eighth Amendment violation. Other courts have held that an inoperable call button, without more, does not violate the Eighth Amendment. *See, e.g.*, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (prisoner officials cannot be held liable for deliberate indifference for failing to perform required cell checks, deactivating emergency call button without investigating call and ignoring sounds of violence and complaints of a fight; such actions are at most negligence); *Mitchell v. Clayton*, No. CV 13-11620, 2016 WL 633949, at *2 (E.D. Mich. Feb. 10, 2016) (while inmate raised legitimate concern regarding

6

difficulty inmates in medical crisis face without emergency call button, plaintiff did not suffer Eighth Amendment violation where he received medical attention within approximately two hours through regular monitoring of inmates by guards), *report and recommendation adopted*, No. 13-11620, 2016 WL 852806 (E.D. Mich. Mar. 3, 2016).

The plaintiff does not allege that he suffers from any special condition requiring an emergency call button. Nor does he alleges that he was not provided medical care for the injuries suffered in the fall or that such care was delayed. The failure to ensure that he was housed in a cell with a working call button by itself does not rise to the level of an Eighth Amendment violation.

    C.    <u>Retaliation</u>

The plaintiff references the First Amendment. The Court assumes that the plaintiff intends to assert a retaliation claim based on his statement that "he remains under the harassment and threats of being disciplined if he 'refuses' to be housed in this unsafe manner." ECF No. 1 at 18; *see also id.* at 11 ("threat of being administered a Disciplinary Report for 'Refusing Housing.'")

To establish a claim for retaliation in contravention of the First Amendment, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Even if the plaintiff presents evidence satisfying each element, the defendants may avoid liability by showing that they "would have disciplined the plaintiff even in the absence of the protected conduct." *Id.* (internal quotation marks omitted) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Because claims of retaliation are easily

7

fabricated, courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

A prisoner's oral speech is subject to limitations. Thus, it may not necessarily constitute protected activity. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995). The Second Circuit has not yet articulated a bright line rule to determine what oral speech is constitutionally protected activity to support a retaliation claim. Merely speaking with a correctional officer at any given time does not constitute protected activity. To rule otherwise would afford constitutional protection to every exchange between inmates and staff. *See Williams v. Smith*, No. 9:11-cv-0601(LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) (verbal complaint "about problems with [inmate plaintiff's] braces" not protected conduct); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (verbal confrontation between inmate and correctional officer not protected conduct).

The plaintiff alleges that he told the defendants that the call button in his cell was not working. He also makes a vague allegation that he has been threatened with disciplinary action (he does not say by whom) if he refused his housing assignment. Complaining to correctional staff is not protected activity of the type necessary to support a retaliation claim. *Mitchell v. Clayton*, No. CV 13-11620, 2016 WL 633949, at *2 (E.D. Mich. Feb. 10, 2016), *report and recommendation adopted,* No. 13-11620, 2016 WL 852806 (E.D. Mich. Mar. 3, 2016). Neither is refusing a housing assignment. The Court concludes that the plaintiff fails to allege a plausible retaliation claim.

In addition, not all verbal threats rise to the level of adverse action. *Barrington v. New*

8

*York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011). For example, a threat that is not direct and specific will not deter an inmate from exercising his constitutional rights. *Id.*; *see, e.g.*, *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (citing cases that threats to "get an inmate" if he did not drop lawsuit, that inmate would be beaten, or inmate would be sent home in a box insufficient to constitute adverse action). The plaintiff does not allege that he received any disciplinary sanction and, apart from one accident for which he "could not receive immediate help," has suffered no harm. The Court does not consider the alleged threat sufficient enough to constitute adverse action. The retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      D.      <u>Equal Protection</u>

The plaintiff's equal protection claim is based on the same conduct as his retaliation claim. The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). The plaintiff does not reference any other inmates and does not allege that he is a member of a protected class or that he was mistreated based on a suspect classification. *See Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18

(W.D.N.Y. 2010) (merely being a prisoner is insufficient to put plaintiff in a suspect class), *aff'd* 449 F. App'x 51 (2d Cir. 2011). Thus, the Court assumes that the plaintiff is asserting a "class of one" equal protection claims.

To state a valid claim under a "class of one" the plaintiff must allege first that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.2d 100 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). The plaintiff identifies no similarly situated inmate who was treated differently, *i.e.*, an inmate with no identified medical need who was moved to a different cell because the emergency call button in the cell was inoperable. Thus he fails to allege facts to support an equal protection claim. The equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

E. <u>Tenth Amendment</u>

The plaintiff alleges that the defendants violates his rights under the Tenth Amendment. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Const. amend X. This amendment provides no private right of action for the plaintiff. *See Rivera v. Federal Bureau of Investigation*, No. 5:16-CV-997(NAM/TWD), 2016 WL 6081435, at *3 n.4 (N.D.N.Y. Sept. 13, 2016), *report and recommendation adopted,* 2016 WL 6072392 (N.D.N.Y. Oct. 17, 2016); *see also Lyle v. George,* No. , 2017 WL 3633745, at *6

(M.D. Tenn. Aug. 7, 2017) (not addressing existence of private right of action but determining that inmate's challenge to conditions of confinement did not support claim under Tenth Amendment); *Lyman v. Arizona Dep't of Econ. Servs.*, No. CV-14-964-PHX-DGC, 2014 WL 4220914, at *2 (D. Ariz. Aug. 26, 2014) (Tenth Amendment does not support private right of action against state agency); *Sanders v. Prince George's Public Sch. Sys.*, No. RWT 08cv501, 2011 WL 768746, at *5 (D. Md. Feb. 28, 2011) (no recognized private right of action for an individual under the Tenth Amendment). The plaintiff's Tenth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### F. State Law Claims

The plaintiff also references negligence and intentional infliction of emotional distress in his complaint. As the Court has dismissed all of the federal law claims in the complaint, it declines to exercise supplemental jurisdiction over the plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims, it should decline to exercise supplemental jurisdiction over supplemental state law claims).

### III. Conclusion

The Court enters the following orders:

(1) All federal law claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and the Court declines to take supplemental jurisdiction over the state law claims.

(2) The Clerk is directed to close this case. If the plaintiff can allege facts to correct the deficiencies identified in this order, he may file a motion to reopen together with an amended complaint within thirty days from the date of this order.

(3) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** this 13th day of November 2017 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge